Nos. 13-17102, 13-17154

## IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FACEBOOK, INC.,

*Plaintiff-Appellee,*

v.

POWER VENTURES, INC.

&

STEVEN SURAJ VACHANI,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of California
Case No. 5:08-cv-05780-LHK, Honorable Lucy Koh

## PETITION FOR PANEL REHEARING
## AND REHEARING EN BANC

| | | |
|---|---|---|
| Amy Sommer Anderson | Marcia Hofmann | Orin S. Kerr |
| AROPLEX LAW | ZEITGEIST LAW PC | LAW OFFICE OF |
| 156 2nd Street | 25 Taylor Street | ORIN S. KERR |
| San Francisco, CA 94105 | San Francisco, CA 94102 | 2000 H Street, NW |
| (415) 866-4066 | (415) 830-6664 | Washington, DC 20052 |
| | | (202) 994-4775 |

*Counsel for Defendant Appellant Power Ventures, Inc.*

Steven Vachani
2425B Channing, #216
Berkeley, CA 94704
(917) 267-9923
*Pro Se* Appellant

## CORPORATE DISCLOSURE STATEMENT

There is no parent corporation and no publicly held corporation that owns

10% or more of Power Ventures, Inc.'s stock.

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………….. iii

TABLE OF AUTHORITIES…………………………………………………… iv

INTRODUCTION AND RULE 35(b) STATEMENT………………………….. 5

FACTUAL AND PROCEDURAL BACKGROUND…………………………. 6

REASONS FOR GRANTING REHEARING………………………………….. 9

    I.   The Panel Opinion Conflicts With This Court's *En Banc* Decision in *United States v. Nosal*....……………………….....…………………… 9

    II.  Rehearing is Necessary to Clarify When Internet Users Will Face Criminal and Civil Liability for Violating Written Restrictions Governing Access to Computers...…………………………………….... 12

    III. Rehearing is Necessary to Ensure that Internet Users Can Delegate Access Rights to Their Agents……………………………………….…... 13

CONCLUSION…………………………..………………………………….. 15

CERTIFICATE OF COMPLIANCE……………………...…………….....… 17

CERTIFICATE OF SERVICE……………………………...…………………… 18

# TABLE OF AUTHORITIES

## CASE LAW

*Facebook, Inc. v. Power Ventures, Inc.*, 5:08-cv-05780-LHK (N.D. Cal. 2008) ………………………………………………………… 4

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025 (N.D. Cal. 2012) ………………………………………………………… 4

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) 9, 11

*United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012)……………….. 1, 2, 5-8, 10, 11

*United States v. Nosal*, Nos. 14-10037 & 14-10025 (9th Cir. July 5, 2016) ("*Nosal II*") …………………………………………………... 11, 12

## STATUTES

15 U.S.C. §7701 - Controlling the Assault of Non-Solicited Pornography And Marketing Act of 2003 ("CAN-SPAM Act")..…… 3

18 U.S.C. § 2……………………………………………………… 10

18 U.S.C. § 1030 - Computer Fraud and Abuse Act ("CFAA")…….. 1, 2, 4-6, 8-11

California Penal Code § 502 ...………………………………………… 2, 4, 5, 11

## OTHER TEXTS

Restatement (Third) of Agency § 2.01 (Am. Law Inst. 2006)………. 10

## INTRODUCTION AND RULE 35(b) STATEMENT

The scope of the Computer Fraud and Abuse Act ("CFAA"), codified at 18 U.S.C. § 1030, is important to every computer user in the United States. Although the CFAA includes a civil cause of action, it is primarily a criminal statute. The CFAA's line between authorized and unauthorized access to computers means the difference between lawful conduct and criminal liability for every American who uses the Internet.

In *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (*en banc*), this Court recognized the threat of broad readings of the CFAA. *Nosal* held that written restrictions on use of a computer, such as website terms of use or an employer's workplace policy, do not control whether access is authorized. *See id.* at 863-64. Under *Nosal,* a user is legally authorized to use his Facebook account even in the face of a written statement on Facebook's website that Facebook prohibits the use.

The panel opinion in this case conflicts with the *en banc* decision in *Nosal* and creates tremendous confusion about when using the Internet is a crime. The panel opinion holds that *Nosal* does not apply when Facebook users permit a third-party to access their accounts and Facebook issues a cease-and-desist letter indicating that the third-party use violates its terms of service. Slip op. at 19-20 (ECF No. 77-1). The panel's rationales for distinguishing *Nosal* were rejected in

*Nosal* itself, however, and they are premised on confusion between the act and mental state elements of the CFAA.

Rehearing is necessary to ensure that the panel opinion does not gut the *en banc* decision in *Nosal* and to avoid widespread confusion about when visiting a website is a crime. The Court already recognized the exceptional importance of the question when it granted the petition for rehearing in *Nosal*. The conflict between *Nosal* and the reasoning of the panel decision makes it necessary to grant rehearing once again to clarify the scope of the law.

Power Ventures and Steven Vachani (collectively "Power") ask this Court to grant panel rehearing or rehearing en banc with respect to liability under the CFAA. Because liability under the CFAA's state counterpart, California Penal Code § 502, was treated as a subsidiary question, Power also seeks review of liability under § 502. Power does not seek rehearing as to the remaining issues decided in the panel opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2006, Power created a service for users of social networking sites such as Facebook and MySpace. Power's service allowed users to aggregate and manage their information and contacts from their accounts on multiple social networking sites at a single website hosted by Power at Power.com. SER 2 at ¶ 2. To utilize

Power's service, users would authorize Power to access their accounts and act on their behalves in executing activities specifically directed by the users.

Facebook objected to this practice and sent a cease-and-desist letter informing Power that Power's conduct "violated Facebook's Terms of Use." SER 298. The letter listed six different terms of use violations that Facebook believed Power had committed by operating as an agent of Facebook's users and acting on the users' behalves. SER 298-99. These violations included accessing another person's Facebook account without Facebook's permission and using Facebook for commercial purposes not expressly approved by Facebook. SER 298-99. The letter then informed Power of various legal causes of action that Facebook believed it "may" have against Power for Power's conduct. SER 299. The letter concluded by asking Power to confirm that in the future it would comply with Facebook's terms of use. SER 299.

After the letter was received, Facebook and Power entered into extensive negotiations about Power's service. Power Opening Brief at 15; 2-ER 173 at ¶ 11; 2-ER 96 at ¶ 6; 2-ER 103-108. When the negotiations were not satisfactorily resolved, Facebook eventually concluded that it did not want Power to access its website. Facebook did not suspend any Facebook user account or revoke any user credentials. Instead, Facebook sued Power, asserting the various causes of action it mentioned in the cease-and-desist letter, including violations of the CFAA, its state

3

counterpart, California Penal Code § 502, and the CAN-SPAM Act, 15 U.S.C. §7701. Compl., *Facebook, Inc. v. Power Ventures, Inc.*, 5:08-cv-05780-LHK (N.D. Cal. 2008) (ECF No. 1). The parties eventually stipulated to the dismissal of most of Facebook's claims, leaving only causes of action under the CFAA, Section 502, and the CAN-SPAM Act. (ECF No. 97).

In 2012, the district court granted summary judgment in favor of Facebook on all three claims, finding (*inter alia*) that Power violated the CFAA and Section 502 by taking steps to avoid Facebook's efforts to block IP addresses associated with Power. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1038-40 (N.D. Cal. 2012).

On July 12, 2016, the panel ruled for Power under CAN-SPAM, but ruled for Facebook on its claims brought under the CFAA and Section 502. Slip op. at 12. According to the panel, the cease-and-desist letter placed Power on notice that visiting Facebook's website was unauthorized under the CFAA. Because Power continued to visit Facebook "after receiving the cease and desist letter," Power "intentionally accessed Facebook's computers knowing that it was not authorized to do so [and was] liable under the CFAA." *Id.* at 20. The panel added that Power violated Section 502 for the same reason. *Id.* at 20-21.

4

## REASONS FOR GRANTING REHEARING

**I.** **The Panel Opinion Conflicts With This Court's *En Banc* Decision in *United States v. Nosal*.**

This Court should grant rehearing because the panel decision is irreconcilable with this Court's *en banc* decision in *Nosal*. *Nosal* held that "violations of private computer use policies" governing access to websites "fail to meet the element of 'without authorization, or exceeds authorized access'" under the CFAA. 676 F.3d at 860, 863. Tellingly, *Nosal* used the hypothetical of a Facebook user permitting someone else to access his account in violation of Facebook's terms of use as example of an access that would be *authorized* under its decision:

> Facebook makes it a violation of the terms of service to let anyone log into your account . . . . Yet it's very common for people to let close friends and relatives check their email or access their online accounts.

*Id*. at 861.

This case involves the same scenario. Facebook users gave Power permission to access their Facebook accounts. That access was concededly in violation of Facebook's terms of use. But under *Nosal*, this violation of terms of use is irrelevant to CFAA liability. The Facebook users had legitimate Facebook accounts that they were authorized to access despite the terms of use violation, just like the errant employees in *Nosal*. And Power accessed the users' accounts with

their permission, acting as their agents, just as *Nosal* contemplated for "close friends and relatives" as authorized access. *Nosal*, 676 F.3d at 863. Yet according to the panel, access in one of these situations violates the CFAA while access in the other does not.

The panel offered three reasons why *Nosal* was "materially distinguishable" from this case. Slip op. at 19. The failure of these reasons to distinguish *Nosal* is at the heart of why rehearing is necessary: The panel's inability to explain why it treated like cases differently leaves the legal rule a mystery.

The panel's first argument for distinguishing *Nosal* is that *Nosal* involved a user who "arguably" exceeded authorized access while this case involve a user who accessed a computer "without authorization." *Id*. at 19-20. According to the panel, there is a critical distinction between a written restriction ordering a user to stay out entirely (which is binding, rendering access "without authorization") and a written restriction ordering a user to stay out only sometimes (which is not binding, as it is not exceeding authorized access under *Nosal*). *Id*.

This distinction is refuted by *Nosal* itself. *Nosal* held that violations of written restrictions do not "meet the element of '*without authorization, or exceeds authorized access*'" under the CFAA. 676 F.3d at 863 (emphasis added). Its rule covered both forms of unauthorized access. *Nosal* rejected the panel's idea that there is a significant difference between "access without authorization" and

6

conduct that "exceeds authorized access," instead concluding that they are the same prohibition. The only distinction is that they simply cover slightly different kinds of trespassers—insiders versus outsiders. *Id*. at 858.

Second, the panel deemed *Nosal* distinguishable because Power was an outsider not subject to any contractual "terms and conditions" of the Facebook website. Slip op. at 20. To the extent this rationale does not just restate the panel's first argument, it fails because the basis of Facebook's case is that Power *was* subject to those terms and conditions. The crux of Facebook's cease-and-desist letter was that Power had violated Facebook's terms of use. SER 298-99. The letter listed the terms of use violations in detail, and it concluded by asking Power to comply with Facebook's terms of use. SER 298-99. Facebook's terms of use make clear that *anyone* who uses Facebook is subject to its terms and conditions. *See* Facebook's Terms of Use ("Statement of Rights and Responsibilities") at https://www.facebook.com/legal/terms. Its own language rejects the panel's attempted distinction.

Finally, the panel tried to distinguish *Nosal* based on the defendants' state of mind. *Nosal* was concerned with Internet users who were "unaware" of written restrictions, the panel explained, while Power "intentionally refused to comply" with Facebook's written language. Slip op. at 20. This attempted distinction is based on confusion between two different elements of the CFAA. To violate the

7

CFAA, a person must (1) access a computer without authorization or exceed authorized access, and (2) do so intentionally. 18 U.S.C. 1030(a)(2)(C). *Nosal* only interpreted the first element, whether the act of unauthorized access was satisfied. Power's state of mind only goes to the second element of whether the *mens rea* of intent was satisfied. As such, it cannot form a basis for distinguishing *Nosal*'s interpretation of unauthorized access.

## II. Rehearing is Necessary to Clarify When Internet Users Will Face Criminal and Civil Liability for Violating Written Restrictions Governing Access to Computers.

Every Internet user regularly encounters written restrictions on using computers. *See Nosal*, 676 F.3d at 856-857. The panel's failure to identify a substantial basis to distinguish *Nosal* creates a great deal of confusion about the critical question the *en banc* court in *Nosal* tried to resolve: When is use of a computer in violation of a written restriction a federal crime? The combination of the panel decision and *Nosal* leaves the answer distressingly unclear.

For example, does liability depend on whether the written restriction forbids the user to access the website entirely or merely conditions when access occurs? *Nosal* indicates that the scope of the restriction makes no difference, but the panel suggests it may be decisive. *Compare Nosal*, 676 F.3d at 863 *with* slip op. at 19-20.

Alternatively, does it matter whether the written restriction is found on the computer accessed, or whether it comes in the form of a letter? Does it matter if the letter merely repeats the terms of use of the website or whether it adds additional restrictions? Does it matter if the restrictions provide clear notice? At various points, the panel opinion suggests that these differences may or may not be critical. *See* slip op. at 17 n.2, 19-20.

By failing to identify the boundary between lawful and unlawful behavior, the panel decision leaves the law unclear for millions of Internet users. Although this case happens to involve a civil suit, any interpretation of the CFAA in a civil context is equally applicable in a criminal prosecution. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009). *Brekka* stressed that the Court should be reluctant to interpret the CFAA "in surprising and novel ways that impose unexpected burdens" on criminal defendants. *Id*. Unfortunately, the panel decision does precisely that.

### III. Rehearing is Necessary to Ensure that Internet Users Can Delegate Access Rights to Their Agents.

The panel also ruled that an Internet account holder cannot delegate rights to access his account on his behalf over the computer owner's objection. Slip op. at 18. The panel's holding that Internet users cannot delegate access rights to agents greatly expands criminal liability online and provides another reason to grant rehearing.

Delegating computer access rights to agents is a routine part of using the Internet. As *Nosal* noted, "it's very common for people to let close friends and relatives check their email or access their online accounts." 676 F.3d at 861. Similarly, an employee might ask a co-worker to access her e-mail to check if a document arrived. An Internet user who wants to export his e-mail from one account to another might use a third-party program to do so. Indeed, using any Internet service is a sort of delegation: A person does not surf the web so much as have Internet-connected computers do so on his behalf.

Under the panel decision, all of these uses are criminal whenever the computer owner objects to the delegation. This conclusion flouts the traditional legal rule that an agent acting on a principal's behalf has the legal authority of the principal and acts as the principal. *See, e.g.*, Restatement (Third) of Agency § 2.01 (Am. Law Inst. 2006). The panel's sole support was a hypothetical about physical entry into a bank that itself cites no authority and is based on analogizing visiting a public website to entering a bank armed with a shotgun. Slip op. at 18-19.

Further, the panel's holding not only makes a criminal of the agent: It also likely makes a criminal out of the principal. The individual Facebook account holder would presumably be guilty of violating the CFAA by aiding and abetting the agent's conduct. *See* 18 U.S.C. § 2. This result is in direct conflict with *Nosal* and signals a dramatic expansion of criminal liability that the Court warned about

10

in *Brekka*. *See generally United States v. Nosal*, Nos. 14-10037 & 14-10025 (9th Cir. July 5, 2016) ("*Nosal II*"), slip op. at 47 (Reinhardt, J., dissenting) (noting that interpreting the CFAA to prohibit password-sharing "loses sight of the anti-hacking purpose of the CFAA, and despite our warning, threatens to criminalize all sorts of innocuous conduct engaged in daily by ordinary citizens.").

When Power accessed its customers' Facebook accounts with their permission, it was acting as its customers' agents. Because the customers were authorized to access their own accounts, Power was authorized as well. The Court should grant rehearing to ensure that the CFAA does not criminalize access by an agent in furtherance of the principal's wishes.


## CONCLUSION

Power Ventures and Steven Vachani respectfully ask the Court to grant panel rehearing or rehearing en banc on whether they violated 18 U.S.C. § 1030. Because the panel's analysis of CFAA liability also determined its analysis of liability under California's state equivalent statute, Penal Code § 502, *see* slip op. at 20-21, they also respectfully ask the Court to grant panel rehearing or rehearing en banc on whether they violated California Penal Code § 502.

11

To the extent that the Court sees common issues raised by this case and *Nosal II*, decided on July 5th, 2016, the Court may wish to grant rehearing in both cases. The petition for rehearing in *Nosal II* is currently due on August 18, 2016.

AROPLEX LAW

Dated: August 9, 2016                    By  */s/ Amy Sommer Anderson*

FILER'S ATTESTATION: Pursuant to Circuit Rule 25-5(f), I attest under penalty of perjury that all other parties on whose behalf the filing is submitted concur in the filing's content.

Dated: August 9, 2016                    /s/ Amy Sommer Anderson

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS**

I certify that this brief complies with the type-volume limitation set forth in Rule 35(b)(2) of the Federal Rules of Appellate Procedure. This brief uses a proportional typeface and 14-point font and contains 2,553 words.


Dated: August 9, 2016          /s/ Amy Sommer Anderson

## CERTIFICATE OF SERVICE

I declare:

I am a citizen of the United States, employed in the City and County of San Francisco, over the age of eighteen years, and not a party to the within case. My business address is AROPLEX LAW, 156 2nd Street, San Francisco, California 94105. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 9, 2016, at San Francisco, California.

/s/ Amy Sommer Anderson